UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO
CIVIL ACTION NO.4:08CV-00106-EHJ

JOHNNY RAY BEASLEY                                                                                  PLAINTIFF

VS.

MICHAEL J. ASTRUE,
Commissioner of Social Security                                                                   DEFENDANT

## FINDINGS OF FACT, CONCLUSIONS OF LAW
## AND RECOMMENDATION

### BACKGROUND

Before the Court is the complaint (DN 1) of Johnny Ray Beasley ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. Section 405(g). Both the plaintiff (DN 10) and the defendant (DN 12) have filed a Fact and Law Summary.

The District Judge has referred the case to the undersigned United States Magistrate Judge (DN 9) to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law and Recommendations. 28 U.S.C. Section 636(b)(1)(B). By Order entered September 30, 2008 (DN 9), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

### FINDINGS OF FACT

Plaintiff filed an application for Disability Insurance Benefits on October 1, 2004 (Tr. 15, 51, 69). Plaintiff alleged that he became disabled on June 13, 2004 as a result of depression, chest pain, degenerative arthritis, and chronic obstructive pulmonary disorder ("COPD") (Tr. 77-78).

Administrative Law Judge Randolph E. Schum ("ALJ") conducted a hearing on June 8, 2006 in Owensboro, Kentucky (Tr. 15, 582).[1] The plaintiff was present and represented by Norma Perry. Also present and testifying was John Grenfell, Ed.D., as a vocational expert (Tr. 50, 582).

In a decision dated September 14, 2006, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 15-24). At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since June 13, 2004, the alleged onset date (Tr. 17). At the second step, the ALJ determined that plaintiff's history of dizziness, degenerative disc disease of the cervical spine, asthma, and major depression are "severe" impairments within the meaning of the regulations (Tr. 17-19). At the third step, the ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 19). At the fourth step, the ALJ found plaintiff has the residual functional capacity to perform less than a full range of light work because he can sit, stand, and walk about six hours each in an eight hour day; he should no more than occasionally climb ladders, ropes and scaffolds; "handling (gross manipulation) is limited to frequently"; his hearing is limited; he should avoid concentrated exposure to extreme cold, humidity, noise, vibration, fumes, odors, dusts, gases, and hazards of moving and dangerous machinery and unprotected heights; his mental impairment moderately limits his ability to carry out detailed instructions and to interact appropriately with the public; he can understand and remember simple instructions and procedures, sustain reasonable concentration, effort and adequate pace for familiar detailed tasks, respond appropriately to supervisors and co-workers for task completion, and

---

[1] Notably, the hearing transcript erroneously indicates that the hearing was held in Tacoma, Washington (Tr. 582).

adapt to situational conditions and changes (Tr. 19-24). The ALJ also found given this residual functional capacity plaintiff is capable of performing his past relevant work as a security guard which is performed at the semi-skilled light exertional level (Tr. 24). Therefore, the ALJ found plaintiff has not been under a "disability," as defined in the Social Security Act, from July 13, 2004, through September 14, 2006 the date of the administrative decision (Tr. 24).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 11). The Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 6-8). The Appeals Council considered the fact that plaintiff has been awarded benefits based on an application that he filed on September 26, 2006 and concluded that the application related to a period after the period adjudicated by the ALJ and that the subsequent award does not indicate the severity of his impairments was any greater than that found by the ALJ for the period at issue (Tr. 7, 579-581).

## CONCLUSIONS OF LAW

The Social Security Act ("Act") authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> "[i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923

(6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. Sections 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have an impairment or combination of impairments that significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that satisfies the duration requirement and meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied plaintiff's claim at the fourth step.

As previously mentioned, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 6-8). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); See 42 U.S.C. § 405(h) (finality of the Commissioner's decision).

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. Section 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Secretary of Health and Human Serv's., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Secretary of Health and Human Serv's., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial

4

evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Secretary of Health and Human Serv's., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Secretary of Health and Human Serv's., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

Plaintiff challenges findings the ALJ made in conjunction with the fourth step in the sequential evaluation process (DN 10). At that step, the ALJ made findings regarding the weight assigned to medical source statements in the record[2], plaintiff's credibility[3], plaintiff's residual functional capacity[4], the physical and mental demands of plaintiff's past relevant work, and plaintiff's ability to return to the past relevant work (Tr. 15-24). 20 C.F.R. § 404.1520(e). The undersigned will first address plaintiff's challenge to the weight assigned to medical source statements in the record.

Plaintiff argues that the ALJ erred in failing to give "controlling weight" to the opinions expressed by his treating internist, Dr. Hardison, in a deposition dated October 6, 2005, and

---

[2]20 C.F.R. § 404.1527(d).

[3]In assessing a claimant's residual functional capacity the Administrative Law Judge must necessarily consider the subjective allegations of the claimant and make credibility findings. 20 C.F.R. § 404.1529; Social Security Ruling 96-7p.

[4]The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546. The residual functional capacity finding is based on a consideration of medical source statements and all other evidence in the case record about what a claimant can do despite limitations caused by his or her physical and mental impairments. 20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546.

in failing to state any sufficient reason for rejecting those opinions (DN 10). In response, defendant argues that the ALJ provided good reasons for rejecting the physical and mental limitations expressed by Dr. Hardison in the deposition and that those reasons are supported by substantial evidence in the record (DN 12).

While the regulations require Administrative Law Judges to evaluate every medical opinion in the record, the process of assigning weight to medical opinions in the record begins with the determination whether to assign controlling weight to the medical opinion of the treating source. 20 C.F.R. § 404.1527(d). Controlling weight is assigned to the medical opinion of a treating source only when it is both well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. Social Security Ruling 96-2p; 20 C.F.R. § 404.1527(d)(2); Bogle v. Sullivan, 998 F.2d 342, 347-348 (6th Cir. 1993); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 857 (6th Cir. 1990). When controlling weight is assigned to the medical opinion of the treating source the Administrative Law Judge is not required to assign weight to the medical opinions from examining and/or non-examining sources. 20 C.F.R. §§ 404.1527(d) and (f)(ii).

Notably, if controlling weight is not assigned to the medical opinion of the treating source then the Administrative Law Judge must determine how much weight it should be accorded and set forth in the administrative decision good reasons for the weight given to the medical opinion. Social Security Ruling 96-2p; 20 C.F.R. § 404.1527(d)(2); Wilson v. Commissioner of Social Security, 378 F.3d 541, 545-546 (6th Cir. 2004) (If an Administrative Law Judge discounts the opinion of a treating physician, the Administrative Law Judge must provide "good reasons" for doing so). Additionally, the Administrative Law Judge must determine how much weight should

be given to medical opinions from examining and/or non-examining sources and provide an explanation in the administrative decision. 20 C.F.R. §§ 404.1527(d) and (f)(ii).

The opinion of an examining physician or psychologist is generally entitled to less weight than that of a treating physician or psychologist, and the opinion of a non-examining State agency physician or psychologist is generally entitled to the least weight of all. 20 C.F.R. §§ 404.1527(d)(1), 404.1527(d)(2), and (f); Social Security Ruling 96-6p. In keeping with these general concepts, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Social Security Ruling 96-6p, 1996 WL 374180, *2 (July 2, 1996). For example, the opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required for treating sources." Social Security Ruling 96-6p, 1996 WL 374180, *2 (July 2, 1996). For this reason, the opinions of non-examining State agencies' medical and psychological advisers can be given weight only to the extent they are supported by the evidence in the record.[5] 20 C.F.R. § 404.1527(f); Social Security Ruling 96-6p; see also Atterbery v. Secretary of Health and Human Services, 871 F.2d 567, 570 (6th Cir. 1989) (Opinions of non-examining State agency psychological adviser that are consistent with the evidence of record represent substantial evidence to support the Administrative Law Judge's findings). Notably, under

---

[5]In making this assessment consideration should be given to such factors as the supportability of the opinion in light of all the evidence in the record (not just the evidence in the record at the time the opinion was rendered), the consistency of the opinion with the record as a whole (including other medical opinions), and any explanation for the opinion provided by the non-examining State agency medical or psychological consultant. Social Security Ruling 96-6p (1996) WL 374180, *2 (July 2, 1996).

certain circumstances the opinions of non-examining State agency medical or psychological consultants may be given greater weight than the opinions of treating or examining sources. Social Security 96-6p, 1996 WL 374180, *3 (July 2, 1996).

The undersigned will first address the ALJ's assignment of weight to medical opinions in the record addressing plaintiff's physical impairments. In pertinent part the administrative decision reads as follows:

> "As for the opinion evidence, the State Agency program physicians found the claimant capable of a range of light work. The claimant could lift and carry 20 pounds occasionally and 10 pounds frequently. He could sit, stand, and walk about six hours each in an eight-hour workday. He should no more than occasionally climb ladders, ropes, and scaffolds, but could perform all other postural activities frequently. Dr. Hardison opined on October 6, 2005, that the claimant should limit lifting and carrying to less than 10 pounds occasionally. He also limited overhead lifting, and pushing and pulling. He agreed that any type of reaching and/or grasping on a repetitive basis could be affected by his impairments. He was restricted from work around heights and dangerous equipment. Dr. Hardison stated that the claimant's ability to stand and sit would be limited to a certain extent, but offered no specific restrictions. The undersigned finds that, based upon the record as a whole, the State Agency program physicians have produced the most credible and persuasive opinion regarding the claimant's physical residual functional capacity. The undersigned notes that Social Security Regulation 20 CFR 404.1527 provide that 'state agency physicians are highly qualified physicians who are also experts in Social Security disability evaluation.' The undersigned finds that the State Agency physicians have produced the most credible assessment of the claimant's residual functional capacity and is persuaded to accept it. While the undersigned carefully considered the opinion of Dr. Hardison, his opinion fails to establish specific work-related limitations for sitting, standing, and walking. Thus, his opinion is not afforded controlling weight or significant weight."

(Tr. 22-23).

Notably, the only objective findings Dr. Hardison cited in support of his physical

limitations opinion is the October 2004 MRI (Tr. 466-471). By contrast, the first non-examining State agency physician to render a physical functional assessment indicated he considered the October 2004 MRI, the October 2004 trastoracic echocardiogram, the gated SPECT test and the results of recent physical examinations (Tr. 170-171). The second non-examining State agency medical consultant considered the above identified medical evidence plus the results of spirometry testing in March of 2005, the cardiac catherization in February 2005, the MRI/MRA of the brain in October 2004 and the results of a recent physical examination by the treating internist (Tr. 454-455). In sum, the record indicates that the physical functional assessments of the two non-examining State agency medical consultants are better supported by the objective evidence in the record than the opinions expressed by the treating internist, Dr. Hardison. For this reason, the undersigned concludes the ALJ's findings regarding the weight accorded to the non-examining State agency medical consultant and Dr. Hardison are supported by substantial evidence in the record and fully comport with applicable law.

The undersigned will now address the ALJ's assignment of weight to medical opinions in the record addressing plaintiff's mental impairments. In pertinent part the administrative decision reads as follows:

> "Regarding the claimant's mental functioning, a consultative examiner opined on December 4, 2004, he would be able to respond appropriately to supervision and co-workers, would have no problem sustaining concentration, persistence, or pace, and no problems adapting to change. The State Agency program psychologists found the claimant capable of understanding and remembering detailed instructions and procedures, sustaining reasonable concentration, effort, and pace for familiar detailed tasks, interacting with others sufficiently for task completion, and adopting adequately to situational conditions and changes. Mild limitations were found in activities of daily living and social functioning, and moderate limitations in maintaining concentration, persistence, and pace. On

9

April 25, 2005 the claimant was evaluated by Ronald Shafer, M.D., at Pennyroyal and given a Global Assessment of Functioning score of 55 indicating a moderate limitation in occupational functioning. Dr. Shafter noted that the claimant was on a subtherapeutic dose of Lexapro, which was increased to 40 mgs. At reconsideration, another program psychologist affirmed the findings at the initial level as stated above. Dr. Hardison, however, opined on October 6, 2005, that the claimant was incapacitated by his anxiety and depression, and that the claimant's functioning had deteriorate [sic] to the point that he was essentially 'nonfunctional'. Dr. Hardison noted mild to moderate problems with dementia due to anxiety and depression, some paranoia, and some concentration problems. Dr. Hardison opined that he did not feel the claimant could function in any capacity where he had to take instruction and follow through with some sort of plan of action. He did not think the claimant could be around people or a stressful work environment. He opined that in the global scheme of things in a work environment, the claimant would function poorly. He did not feel the claimant could complete a normal workday in a normal workweek without interruptions from psychologically based symptoms. He stated that the claimant could not respond to criticism from supervisors or respond to changes in a routine work setting. Dr. Hardison further stated that, if the claimant worked, he would need to be by himself, but then would be limited by physical limitations. On October 24, 2005, a clinical social worker from Pennyroyal opined that claimant would not function in a work setting. The claimant was discharged from Western State Hospital on February 27, 2006, following a 72-hour stay at which time his Global Assessment of Functioning score was estimated at 70 for current and past year functioning.

The undersigned is persuaded to accept the opinion of the State Agency non-examining psychologists. The conclusory opinion of the consultative examiner is generally consistent with that of the State Agency and does not preclude all work. Dr. Hardison's opinion lacks support by treatment records and is excessive given other opinions of record. A social worker is not an acceptable medical source for determination of disability as set out in 20 CFR 404.1513. Therefore, her opinion is given no weight. The undersigned also finds the social worker's opinion to be unsupported by the evidence of record. The Global Assessment of Functioning scores assessed by Western State Hospital indicate the claimant generally functions well. The undersigned notes that Social Security Regulation 20 CFR 404.1527 provides that 'state agency psychologists are highly qualified psychologists who are also experts in Social Security disability

> evaluation.'  The undersigned finds that the State Agency psychologists have produced the most credible assessment of the claimant's mental impairment and is persuaded to accept it."

(Tr. 23-24).

In essence, the ALJ concluded the functional opinions expressed by the non-examining State agency psychologists are more consistent with the opinions expressed by the consultative psychiatric examiner, Dr. Singletary-Jones, in December of 2004; the opinions expressed in the psychiatric evaluation that Dr. Shafer prepared in April of 2005; and the opinions expressed in the discharge summary prepared by Dr. Ali at the Western State Hospital following a 72-hour stay (Tr. 23-24). After carefully reviewing the record the undersigned concludes that substantial evidence in the record supports the ALJ's finding. True, Dr. Hardison is a treating source but he is an internist, not a psychologist or psychiatrist. Moreover, the mental limitations Dr. Hardison expressed during the deposition are based upon plaintiff's performance on a mini mental status test he administered and plaintiff's subjective statements (Tr. 471-474). In sum, the undersigned concludes that the ALJ's findings regarding the weight accorded to medical opinions in the record regarding plaintiff's mental impairments are supported by substantial evidence in the record and fully comport with applicable law.

Next, plaintiff challenges the ALJ's finding that his statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely credible (DN 10). Notably, plaintiff's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled; there must be medical signs and laboratory findings that show the existence of a mental impairment that could reasonably be expected to give rise to the pain alleged. 20 C.F.R. § 404.1529(a). In determining whether plaintiff suffers from debilitating pain and other

11

symptoms, the two-part test set forth in Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986), applies. Here, the ALJ examined the record and determined there is objective medical evidence of underlying physical and mental conditions (Tr. 19-24). Next, the ALJ determined that the objectively established medical conditions are not of such severity that they can reasonably be expected to produce the alleged disabling pain and other symptoms (Tr. 19-24). Further, the ALJ considered other information and factors that may be relevant to the degree of pain and other symptoms alleged (Tr. 19-24). For example, the ALJ considered conflicts within the record regarding the reason plaintiff stopped working and pulmonary function studies showing no more than mild pulmonary disease in contrast to plaintiff's claims (Tr. 19-24). 20 C.F.R. § 404.1529(c)(4); Social Security Ruling 96-7p. The ALJ also considered the fact that plaintiff takes 800 mgs. of Ibuprofen three times daily rather than stronger prescription pain relievers (Tr. 21). 20 C.F.R. § 404.1529(c)(3)(iv); Social Security Ruling 96-7p; Maher v. Secretary of Health and Human Services, 898 F.2d 1106, 1109 (6th Cir. 1989) (Mild medication and infrequency of dosages do not bear out claims of debilitating pain).

The ALJ found from the medical record and plaintiff's testimony that plaintiff does not suffer pain and other symptoms to the extent he testified (Tr. 19-24). In the absence of detailed corroborating evidence of plaintiff's subjective complaints, it becomes the duty of the ALJ to resolve the issue of plaintiff's credibility. Since tolerance of pain and other symptoms is a highly individualized matter, and a determination of disability based on pain and other symptoms depends, of necessity, largely on the credibility of plaintiff, the conclusion of the ALJ, who has the opportunity to observe plaintiff's demeanor, "should not be discharged lightly." Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984) (citation omitted). The

undersigned concludes that the ALJ's findings regarding plaintiff's credibility are supported by substantial evidence and fully comport with applicable law.

Next, plaintiff challenges the ALJ's finding that in light of his residual functional capacity plaintiff is capable of performing his past relevant work as a security guard (DN 10). Notably, plaintiff's challenge is premised on the mental and physical limitations expressed by Dr. Hardison in the October 2005 deposition (DN 10). For the reasons set forth above plaintiff's reliance on the limitations expressed by Dr. Hardison are misplaced. Moreover, the testimony of the vocational expert provides substantial evidence to support the ALJ's finding that plaintiff has the residual functional capacity to perform his past relevant work as a security guard (Tr. 24, 601-602). Notably, the vocational expert testified that even if the physical limitations expressed by Dr. Hardison are utilized plaintiff is still capable of performing his past relevant work as a security guard (Tr. 602-603). In sum, the ALJ's finding that plaintiff is capable of performing his past relevant work as a security guard is supported by substantial evidence in the record and fully comports with applicable law.

## RECOMMENDATION

For the foregoing reasons, the undersigned concludes that the Commissioner's findings are supported by substantial evidence, and it is recommended that judgment be granted for the Commissioner.

## NOTICE

Therefore, under the provisions of 28 U.S.C. Sections 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within ten (10) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be filed within ten (10) days or further appeal is waived. Thomas v. Arn, 728 F.2d 813 (6th Cir.), aff'd, 474 U.S. 140 (1984).

Copies:     Counsel

14